UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>RAFAEL GONZALEZ-VINCENTE, )<br>(a/k/a Willy, a/k/a Raphael )<br>Gonzalez, Jr.) ET AL, )<br>Defendants, )<br>) | CRIMINAL ACTION<br>NO. 05-1631-CBS |

**MEMORANDUM OF PROBABLE CAUSE AND
ORDER ON THE GOVERNMENT'S MOTION FOR DETENTION**
February 4, 2005

**SWARTWOOD, M.J.**

I. Nature of the Offense and the Government's Motion

On January 20, 2005 a Criminal Complaint was filed, charging Rafael Gonzalez-Vincente ("Mr. Gonzalez-Vincente") and another, with conspiracy to possess with intent to distribute cocaine base and cocaine, in violation of 21 U.S.C. §846 and possession with intent to distribute and distribution of cocaine base and cocaine, in violation of 21 U.S.C. §841(a)(1).

At Mr. Gonzalez-Vincente's initial appearance on January 29, 2005, he was informed of his right to a preliminary examination in accordance with Fed. R. Crim. P. 5.1 and the Government moved for a detention hearing in accordance with 18 U.S.C. §§3142, (f)(1)(B)(Mr. Gonzalez-Vincente is charged with an offense which provides for a maximum sentence of life imprisonment),

(f)(1)(C)(Mr. Gonzalez-Vincente is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the "Control Substances Act") (21 U.S.C. § 801 *et seq.*)) and (f)(2)(A)(risk of flight).

The matter then continued at Mr. Gonzalez-Vincente's request to February 3, 2005 for a consolidated probable cause/detention hearing. At that hearing, Matthew M. Deignan, Special Agent with the Drug Enforcement Administration ("DEA"), testified on behalf of the Government and was cross-examined by Mr. Gonzalez-Vincente's counsel.

## II.  Findings of Fact

1.  Since August 2003, a confidential source ("CS") made contact with Mr. Gonzalez-Vincente for the purpose of purchasing cocaine base. Govt. Ex. 1.

2.  Most of the arrangements made between the CS and Mr. Gonzalez-Vincente for the purchase of cocaine base were monitored and recorded by law enforcement officials and involved the following controlled purchases:

>    A.  On September 2, 2003, the CS purchased 26.2 grams of cocaine base from Mr. Gonzalez-Vincente for $1,200;
>
>    B.  On September 16, 2003, the CS purchased 121 grams of cocaine base from Mr. Gonzalez-Vincente for a total of $4,500;
>
>    C.  On February 12, 2004, the CS purchased 26.8 grams of cocaine base from Mr. Gonzalez-Vincente and the co-defendant named in this Complaint for $1,500;

  D. On August 12, 2004, by arrangement with Mr. Gonzalez-Vincente, the CS purchased 25.8 grams of crack cocaine for $1,500;

  E. On September 22, 2004, Mr. Gonzalez-Vincente made arrangements for the CS and a DEA undercover agent ("UCA") to purchase 47.1 grams of cocaine base for $3,000 (after the cocaine base was delivered to the CS and UCA on this occasion, Mr. Gonzalez-Vincente called the CS and told him that he had given him a gift of a small quantity of cocaine in addition to the crack cocaine that he ordered. The additional substance given to the CS and UCA was later analyzed and determined to contain 1.1 grams of cocaine);

  F. On October 28, 2004, the UCA purchased 26.9 grams of cocaine base from Mr. Gonzalez-Vincente and the co-defendant named in this Complaint for $1,500; and

  G. On November 17, 2004, the UCA purchased 24.9 grams of cocaine base from Mr. Gonzalez-Vincente for $1,500.

  3. In December 2004 and January 2005, the CS had numerous conversations with Mr. Gonzalez-Vincente concerning the purchase of a kilogram of cocaine base. However, those negotiations were finally terminated on January 19-20, 2005 without a sale.

  4. In the period of January 19-20, 2005, Mr. Gonzalez-Vincente told the CS that he planned to take a trip. Further investigation revealed that on January 20, Mr. Gonzalez-Vincente made a reservation on American Airlines for a flight on January 21 from Boston to the Dominican Republic. That reservation was cancelled by American Airlines on January 20 because of payment problems for the ticket.

5. Mr. Gonzalez-Vincente was arrested on January 27, 2005. Just prior to the arrest of Mr. Gonzalez-Vincente, he was walking on a street in Gloucester, Massachusetts. When Mr. Gonzalez-Vincente saw law enforcement officials approaching him, he threw a plastic bag into a snow bank. The plastic bag was retrieved and found to contain 43 grams of cocaine.

6. When Mr. Gonzalez-Vincente was first arrested, he initially told law enforcement officials that his name was Alfredo Sano (which is an alias previously used by Mr. Gonzalez-Vincente) and that he was born in Puerto Rico. Eventually, Mr. Gonzalez-Vincente admitted to his true identity.

### III. Probable Cause

I find that on seven occasions, Mr. Gonzalez-Vincente was involved in the sale of cocaine base and cocaine to the CS and/or a UCA. All of these transactions were recorded, monitored and surveilled and the substances purchased from Mr. Gonzalez-Vincente were sent to a lab and tested positive for the presence of cocaine base and cocaine. Therefore, I find probable cause for the offenses charged in this Complaint against Mr. Gonzales-Vincente.

### IV. The Bail Reform Act

#### A. Discussion of the Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an

unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a).  Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e).   The Supreme Court, in United States v. Salerno, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." Id. at 755, 107 S.Ct. at 2105. For this reason,  the Defendant may be detained only if the judicial officer finds by (1) clear and convincing evidence, that the Defendant is a danger to the community, or (2) a preponderance of the evidence, that the Defendant poses a risk of flight.  See 18 U.S.C. § 3142 (f); United States v. Jackson, 823 F.2d 4-5 (2d Cir. 1987); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986).  See also United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991). Furthermore, the judicial officer "may not impose

financial condition that results in the pretrial detention of the person". 18 U.S.C. § 3142 (c).

The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted. See 18 U.S.C. § 3142 (f)(1). The Government may also move for detention, or the judicial officer may on his or her own motion move for detention, where the case involves a serious risk that the Defendant will flee or that the Defendant will obstruct or attempt to obstruct justice. 18 U.S.C. § 3142(f)(2). Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the Defendant and the safety of the community against any danger posed by the Defendant's pretrial release. See United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988).

In meeting its burden on the issue of whether any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community, the Government is aided by the statutory presumptions created by 18 U.S.C. 3142(e). Where the offense charged is one of the offenses enumerated in Section 3142(f)(1), Section 3142(e) creates the rebuttable presumption that no condition or combination

of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the Defendant has been convicted of a federal offense that is described in Section 3142(f) or an offense under state law that would have been an offense described in Section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense. Section 3142(e) also creates the rebuttable presumption that no condition or combination of conditions will ensure the safety of the community and the appearance of the Defendant if the judicial officer finds that there is probable cause to believe that the Defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed (a) in the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c). In order to rebut either presumption, the Defendant must produce "some evidence" to the contrary. United States v. Jessup, 752 F.2d 378, 384 (1st Cir. 1985).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and

of the community", the judicial officer is compelled to consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including:
>
>> 1. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> 2. whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
>
> (4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

   V.   <u>Discussion of Whether Detention is Warranted</u>

   A.   <u>Mr. Gonzalez-Vincente's History and Characteristics</u>

Mr. Gonzalez-Vincente was born in the Dominican Republic on December 20, 1971, where he continued to reside until 1987, when he entered the United States. Mr. Gonzalez-Vincente obtained legal status in the United States in 1993 after marrying a United States citizen and is presently a legal resident alien.

Prior to his arrest, Mr. Gonzalez-Vincente had been residing with his girlfriend, Ms. Santiago, and her seven year old son in Peabody, Massachusetts. Prior to residing with his girlfriend, Mr. Gonzalez-Vincente lived mostly with his mother at various addresses in Salem, Massachusetts and occasionally with his sister, Ms. Bettini.

Mr. Gonzalez-Vincente's father resides in the Dominican Republic and his mother, a United States citizen, resides in Salem, Massachusetts. Mr. Gonzalez-Vincente has a sister who lives in the Dominican Republic. Another sister, Ms. Bettini, resides in Salem with her husband and children. Mr. Gonzalez-Vincente has five children, four of whom reside with their mother, Ms. Gonell, in Salem. Mr. Gonzalez-Vincente also has a fourteen year old daughter who lives with her mother, Ms. Geno, in Boston. Mr. Gonzalez-Vincente is married to Ms. Santil, with whom he has no children. The couple is separated and Ms. Santil lives on the North Shore.

Mr. Gonzalez-Vincente is self-employed as a producer/owner of Moreno Productions, a Dominican Republic company, which rents nightclubs and provides bands to play at those clubs. Some of the bands come from the Dominican Republic and consequently, Mr. Gonzalez-Vincente travels to the Dominican Republic approximately twice a year for employment purposes and last visited the Dominican Republic in September 2004.

Mr. Gonzalez-Vincente has no record of criminal convictions. However, his wife did obtain a 14 day civil restraining order against him in February 2001.

B. Nature of the Offense and Weight of the Evidence

I have previously found probable cause for the offenses charged against Mr. Gonzalez-Vincente in this Complaint. Mr. Gonzalez-Vincente is charged with seven controlled purchases of crack cocaine and cocaine to a CS and at least two of those controlled sales of crack cocaine were to a UCA. All of these transactions were monitored, recorded and surveilled in some form. Therefore, the weight of the evidence against Mr. Gonzalez-Vincente in this case is substantial.

C. Rebuttable Presumption

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(B), (f)(1)(C) and (f)(2)(A). The Government must prove that there is no condition or combination of conditions that would reasonably assure the safety of any other person or the community if Mr. Gonzalez-Vincente is released, or the appearance of Mr. Gonzalez-Vincente as required.

The rebuttable presumption created by 18 U.S.C. § 3142(e) applies in this case because Mr. Gonzalez-Vincente is charged with a drug offense for which a maximum penalty of ten years or more is prescribed in the Controlled Substances Act. I have previously found that there exists probable cause for the charges against him.

Therefore, I find that under 18 U.S.C. § 3142(e), there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Mr. Gonzalez-Vincente or the safety of the community if he were released. I find that Mr. Gonzalez-Vincente has not produced nor proffered any credible evidence on his behalf to rebut this presumption. Without such evidence, the presumption alone may justify detention. <u>United States v. Alatishe</u>, 768 F.2d 364, 371 (D.C. Cir. 1985); <u>United States v. Vires</u>, 637 F. Supp. 1343, 1351 (W.D.Ky. 1986). Although I have determined that Mr. Gonzalez-Vincente has failed to rebut the presumption, for the sake of completeness, I will examine the Government's assertion that he poses a danger to the community and a risk of flight.

F.   <u>Government's Burden</u>

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(B), (f)(1)(C) and (f)(2)(A). The Government must prove that there is no condition or combination of conditions that would reasonably assure the safety of any other person or the community if Mr. Gonzalez-Vincente is released, or the appearance of Mr. Gonzalez-Vincente as required.

The Government's burden of proof is by:

1.   *Clear and convincing evidence* that Mr. Gonzalez-Vincente, if released, would pose a serious danger to any person or the community, or

    2.    A *preponderance of the evidence* that Mr. Gonzalez-Vincente, if released, would not appear as required.

    G.    <u>Whether Mr. Gonzalez-Vincente Poses A Danger To The Community</u>

Mr. Gonzalez-Vincente has no record of criminal convictions. Additionally, I find that although Mr. Gonzalez-Vincente was on multiple occasions able to produce 23 to 43 grams of crack cocaine when ordered by the CS or the UCA, he was unable to produce a kilo of cocaine in a sale of that amount arranged with the CS. Therefore, I conclude that Mr. Gonzalez-Vincente is a middleman as that term is used in the illegal drug trade and that he depends on others for his source of supply. I am also mindful that as a result of the execution of a search warrant at an address where Mr. Gonzalez-Vincente had at one time resided and, during the course of this investigation, had been surveilled, no illegal drugs were found. Therefore, considering the totality of these circumstances, I cannot, independent of the rebuttable presumption, find that Mr. Gonzalez-Vincente poses a danger to the community if he were released.

    H.    <u>Whether Mr. Gonzalez-Vincente Poses A Risk Of Flight</u>

I find by a preponderance of the evidence that Mr. Gonzalez-Vincente poses a risk of flight and base this finding on the following facts: Mr. Gonzalez-Vincente has family and business ties and has traveled extensively to the Dominican Republic; Mr. Gonzalez-Vincente used an alias to avoid arrest; Mr. Gonzalez-

Vincente faces a potential minimum/mandatory sentence of ten years if convicted of the offenses charged in this Complaint; Mr. Gonzalez-Vincente faces almost certain deportation to the Dominican Republic if he is convicted of the offenses charged in this Complaint; and Mr. Gonzalez-Vincente's attempt to leave Massachusetts for the Dominican Republic when he suspected that the CS and UCA were Government agents.  Furthermore, although Mr. Gonzalez-Vincente has strong family ties to the North Shore of Massachusetts, he has exhibited itinerant living arrangements with his mother, sister and his girlfriend which demonstrates a failure to develop strong ties to this District.

V.   Order of Detention Pending Trial

In accordance with the foregoing memorandum,
IT IS ORDERED:

1.   That Mr. Gonzalez-Vincente be committed to the custody of the Attorney General or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2.   That Mr. Gonzalez-Vincente be afforded a reasonable opportunity for private consultation with counsel; and

3.   On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Mr. Gonzalez-Vincente is detained and

confined shall deliver Mr. Gonzalez-Vincente to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

RIGHT OF APPEAL

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

/s/Charles B. Swartwood, III
CHARLES B. SWARTWOOD, III
MAGISTRATE JUDGE